## BLACK et al. v. MORGAN et al.
### 6 Div. 356.

Supreme Court of Alabama.
Oct. 5, 1933.

Pennington & Tweedy, of Jasper, for appellant.

Davis & Curtis, of Jasper, for appellee.

BOULDIN, Justice.

The appeal is from a decree of the probate court, which, among other things, denied an application to remove executors named in a will, and to revoke letters testamentary issued to them many years before the proceedings now presented.

The grounds of removal are set out in Code, § 5789. Castleberry v. Hollingsworth, 215 Ala. 445, 111 So. 35.

Among the grounds upon which removal was sought was failure to return an inventory as per statute. Code, § 5789, subd. 2.

The will of decedent contained the following: "5. I direct and request my executors to have this will probated and recorded, to file in the office of the Judge of Probate of Walker County, Alabama, annually, a condensed verified statement showing the condition of my estate, and if practicable avoid any further costs, however I leave that matter to their best judgment."

In 1924, some two years after appointment, the executors filed a verified statement in the probate court in compliance with this direction in the will, containing a full list of the property of the estate, real and personal, including choses in action.

Without serious question this statement was substantially correct, was made in entire good faith, and its sufficiency was not questioned for many years. For the purposes in hand, it should be treated as an inventory of the estate.

While our present statute, Code, § 1803, giving effect to provisions in a will exempting an executor from filing inventories and making settlements in court, except when required so to do, was not in force when these executors were appointed, the rule, in the absence of such statute, did not put the execu-

tor, who followed the directions of the testator, in default, unless and until there was a demand or order for inventory or settlement. Parker v. Robertson, 205 Ala. 434, 88 So. 418; Wright v. Menefee, 226 Ala. 55, 145 So. 315; Hubbard v. Smith, 45 Ala. 516; Hightower v. Moore, 46 Ala. 466.

█ Complaint is further made that the executors did not comply with the directions of the will to file an annual statement of the condition of the estate. A further statement, supplemental in character, was filed in 1925, and again in 1931. In view of the discretion given the executors by the above-quoted provision of the will, the purpose to avoid expense, and the acquiescence to be hereafter further discussed, no such dereliction appears in this regard as would warrant the removal of these executors.

█ In so holding, we would not be understood as declaring that the court of probate can remove executors for noncompliance with directions in a will at variance with the statutory provisions for the administration and settlement of estates. Special trusts imposed on executors by will are to be enforced in equity, and may be without the statutory jurisdiction of probate courts.

█ The chief complaint made by appellants is the failure of the executors to keep any books of account showing receipts, the dates, amounts, from whom collected, etc.

The primary duty of an executor is to receive, collect, conserve, and faithfully administer and disburse the assets of the estate, and render a true and accurate account of same. .Incidental to this he should keep such data as will enable him to render such account. No particular form of books or memoranda is required. But manifestly an estate may be of such magnitude, involving many transactions, and collections from varied sources through a long series of years, that a failure to preserve some form of memoranda from which he can render due account of his doings, may evidence such incompetence or want of regard for the obligations of his trust, as to mark him as an "unfit person" to have charge of the estate, and warrant his removal. 11 R. C. L. 175; Pfefferle v. Herr, 138 Am. St. Rep. 533 (note); Gray v. Gray, 39 N. J. Eq. 332; In re Hickey, 34 Misc. 360, 69 N. Y. S. 844.

The estate of the decedent, R. M. Morgan, consisted of numerous parcels of land, some farm land and some mineral land, money in bank, bank stocks, notes, and mortgages, and some other choses, and a few chattels.

The beneficiaries of his will were his nine children, three sons and six daughters, all of full age and residing in the county of the testator. The three sons were named executors, who duly qualified, made bond, and received letters testamentary.

The will contemplated a winding up of the estate by deliberate processes and at minimum costs; empowered the executors to lease lands, and to sell real and personal property, but sales of real estate were not to be made within a year without the consent of all the beneficiaries, and indicated a desire that all the beneficiaries co-operate in the sale of lands.

The estate owed substantially no debts.

One of the commendable features of the entire administrations of these executors is that prompt distribution was made directly to the beneficiaries at frequent intervals, reserving such balances as seemed prudent to cover taxes and other demands.

The cash on hand was thus promptly distributed, the shares of bank stock divided, one parcel of land divided, and others sold from time to time, mostly to members of the family, and all by common consent, save one small sale, wherein one of the sisters claimed the property as her own, which gave rise to a controversy leading up to this suit. Other distributions, in all some thirty, were made from time to time as funds came to hand.

In December, 1931, certain beneficiaries filed a petition praying an order requiring the surviving executors, the present appellees, "to file a further report in this cause showing the disposition of each and every piece of real estate disposed of by them, to whom said real estate was sold and the purchase price received therefor; the sale of all personal property belonging to said estate, the name of each person to whom each piece of property was sold and the purchase price received therefor; collections made on all notes. And also statement showing the disposition and distribution by such executors of all monies received by them for said estate." A citation was issued accordingly.

Without awaiting an order, the executors proceeded to file a full and detailed report touching the disposition of the several parcels of property, the amounts received therefor, collections on notes and mortgages, etc., but adding:

"Collected divers sums of interest on outstanding notes.

"Collected divers small amounts of rents.

"Collected divers royalties."

This report also showed all disbursements, with vouchers in the form of bank checks, indorsed by the payees, paid by the bank, and held by the executors as vouchers.

Exceptions were filed to this report, answer filed to exceptions, and amended exceptions filed incorporating a petition for the removal of the executors on numerous grounds, some of which present statutory grounds for removal.

Before this last amendment the executors filed a full report of royalties received by

them on a coal mining lease executed by them and still running. These royalties, aggregating $14,053.50, had mostly been distributed from time to time.

On the hearing there was conflict in the evidence touching the readiness and willingness of the executors to give full information at all times as requested.

Touching books of account, it appeared that for some five years one of the executors, now deceased, had kept substantially full accounts of receipts. After his death, the present executors kept no book accounts, and on examination could not give dates, amounts, or names of persons from whom collections of rents or interest on choses in action had been received.

But their evidence shows that all moneys collected from each and every source were promptly deposited in bank to their account as executors, that no funds were applied to personal use, and checks and stubs produced showing full disbursement of all funds to date.

The trial court, hearing the testimony ore tenus, found "that the Executors have been loose or negligent in the manner or method of bookkeeping used ·by them," and ordered that detailed book accounts be kept in future.

The ˙ court further decreed: "The court finds that the petitioners in this case kept silent for many years and until hard feelings ˙ arose over this estate; and the honésty of the Executors being admitted in open court," and "The Court is of the opinion that the said Executors have not been guilty of any gross neglect and so finds; the Court is of the opinion that said Executors have not been guilty of any willful misconduct whereby said estate has lost anything and so finds."

The record sustains this finding. The executors have been vigilant, and exercised good judgment in handling this estate, with results which have enhanced its value to the beneficiaries. A faithful and vigilant execution of the trust and a full distribution of the assets to those entitled is the vital test.

The proceeding was also converted into a partial settlement of the estate, wherein the accounts were passed and allowed, and commissions of the executors and counsel fees for attorneys fixed and allowed to date.

Appellants on this appeal seek to review the allowances for commissions and counsel fees.

█ A decree on partial settlement will not support an appeal. Such decree is not final. By the terms of the statute it is subject to reconsideration as to any item on final settlement (Code, § 5918), and may be reviewed on appeal from decree on final settlement (Code, § 6115 (5); McAllister's ·Executor v. Thompson, 32 Ala. 497; Cunningham v. Cunningham, 215 Ala. 484, 111 So. 208).

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.